**IT IS SO ORDERED.**

**Dated:  15 May, 2025 02:59 PM**

_____
Suzana Krstevski Koch
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| THOMAS R. BERKLEY, | ) | Case No. 24-12845 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Judge Suzana Krstevski Koch |
| | ) | |
| AARON CASTILLO, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding |
| | ) | No. 24-01074 |
| v. | ) | |
| | ) | |
| THOMAS R. BERKLEY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION AND ORDER

Plaintiffs Aaron Castillo et al. (the "Plaintiffs") filed a Complaint (the "Complaint") pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). (ECF No. 1).[1] Defendant Thomas R. Berkley ("Berkley") filed his Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion to Dismiss"), or in the alternative, a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure (the "Motion for More Definite Statement") ECF No. 4. For the reasons stated below, Berkley's Rule 12(b)(6) Motion to Dismiss is granted in part and denied in part, and his Motion for More Definite Statement is denied.

## JURISDICTION

The Court has jurisdiction over Berkley's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order 2012-07 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this Court may hear and determine under 28 U.S.C. § 157(b)(2)(I). Venue in this Court is proper under 28 U.S.C. § 1409. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

On October 21, 2024, the Plaintiffs filed their Complaint, alleging each of them independently contracted with Berkley Marketing Inc. ("Berkley Marketing"), a company owned

---

[1] The Complaint is made on behalf of twenty-seven Plaintiff Creditors: Aaron Castillo, Aaron Walker, Allen Lin, Bethany Burge-Bosbous, Joseph Bosbous, Bradley Lindley, Clifford Roberson, Dena Roberson, Drew Burton, Dylan Goldstein, Ernest Muhammad, Howard Wilson, James Spevak, Jonathan Kavner, Justin Oda, Lois Roundtree, Percy Johnson, Scott Dundesen, Sekou Bonds, Sonya Muhammad, Stacey Spencer, Staci Winstead, Thaddious Echols, Taijuan Billingsley, Vidal Moreno, Willie Harris, and Zarine Chamas.

and controlled by Debtor Thomas Berkley, which "offered services related to acquiring and managing ATM machines as a business opportunity." ECF No. 1, ¶¶ 10, 14. The Complaint states that Berkley "made numerous representations both orally and in writing to the Plaintiffs to entice them to enter into their respective agreements with Berkley Marketing." *Id*., ¶ 15.

According to the Plaintiffs, the means by which they claim Berkley enticed them was as follows: "representations. . . regarding the profitability and viability of the ATM business opportunity, . . . [g]uaranteeing a 40% return on investment within the first year, completely risk free; promising to provide and install all contracted ATMs within a specific timeframe. . . ; [g]uaranteeing a minimum monthly transition volume for each ATM. . . ; [p]romising to relocate failing ATMs at no cost; [o]ffering additional ATMs for free if locations were failing; [p]roviding lifetime access to educational and networking resources," and advertising that "TV's Kevin Harrington of Shark Tank fame mentored [Berkley] and sponsored his businesses. . . ." *Id*., ¶¶ 15, 16. Additionally, the Plaintiffs allege Berkley "used his past as an Air Force veteran to attract entrepreneurs and present himself as a trustworthy businessman to the public" and "showcased his purported success across the internet by flaunting exotic luxury vehicles and cash he said he had earned from his business ventures." *Id*., ¶¶ 19, 20.

The Complaint also includes a chart demonstrating individual contract dates, amounts paid, ATMs promised, and ATMs received related to each respective plaintiff and Berkley Marketing. *Id.*, ¶55. The Complaint states the chart functions to "illustrate[] the scope and systemic nature of Berkley's fraudulent activities" and to show that his actions "were not mere business failures or isolated incidents, but rather a systematic and intentional scheme to defraud the Plaintiffs." *Id*., ¶¶ 59, 60.

3

24-01074-skk    Doc 27    FILED 05/15/25    ENTERED 05/16/25 09:08:02    Page 3 of 19

The Plaintiffs claim they "relied on these representations and contracted with [Berkley Marketing], paying substantial sums of money for ATMs and related services." *Id.*, ¶ 21. They also claim that Berkley Marketing "failed to fulfill the contractual obligations and promises made to the Plaintiffs, including. . . : [f]ailing to deliver all contracted ATMs; [n]ot relocating failing ATMs; [f]ailing to provide the guaranteed returns on investment; [n]ot meeting the promised minimum monthly transactions;" and "[r]efusing to provide refunds or additional ATMs as guaranteed." *Id.*, ¶ 27. Moreover, the Plaintiffs claim they "received only some or none of the ATMs the contracted and paid for. Those who received ATMs found they significantly underperformed compared to the promised monthly minimum transactions and 40% ROI." *Id.*, ¶ 28.

The Plaintiffs assert Berkley "exercised complete control" over Berkley Marketing, "disregarding corporate formalities and treating the corporation as their alter ego" (*Id.*, ¶30); "regularly comingled corporate funds with his personal funds" (*Id.*, ¶ 31); and was "grossly undercapitalized for the nature and scale of its business operations. . . ." *Id.*, ¶ 32.

The Plaintiffs claim the debts owed to them should be deemed nondischargible under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). The Plaintiffs claim they have a cause of action under § 523(a)(2)(A) because of the "systemic and prolonged nature of [Berkley's] fraudulent scheme, the substantial harm caused to numerous Plaintiffs, and [Berkley's] clear intent to deceive. . . ." *Id.*, ¶ 70. The Plaintiffs claim the debts owed should similarly be deemed nondischargible under § 523(a)(4) because of Berkley's "breaches of fiduciary duty, his misuse of his position of trust, and the substantial harm caused to Plaintiffs who relied on his expertise and representations. . . ." *Id.*, ¶ 77.

On December 23, 2024, Berkley filed his Motion to Dismiss pursuant to Rule 12(b)(6) or, in the alternative, Motion for More Definite Statement pursuant to Rule 12(e).  ECF No. 4.  Therein, Berkley states "[i]t is unclear from the face of the Complaint what 'debts' the Plaintiffs are seeking to have determined non-dischargeable."  *Id*.  Further, Berkley argues that the "Plaintiffs' Complaint presents no evidence or allegations suggesting that [Berkley] is personally liable. . . ."  *Id*.  Further, Berkley points to the Plaintiffs' "fail[ure] to include state law causes of action to first establish the existence of a debt owed to them by [Berkley]."  *Id*.  As a result, says Berkley, the Plaintiffs "failed to meet the plausibility pleadings standards of *Ashcroft* and *Twombly* and have failed to state a claim upon which relief can be granted."  *Id.*

On April 4, 2025, the Plaintiffs filed their Response to Berkley's Motion.  ECF No. 26.

## LAW AND ANALYSIS

### I.      Rule 12(b)(6) Standard

Berkley's Motion to Dismiss under Rule 12(b)(6) applies in this proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'"  *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007)).  This standard established in *Twombly* is now recognized as the "plausibility standard."  The United States Supreme Court concisely explained the plausibility standard in *Ashcroft v. Iqbal*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has

5

24-01074-skk    Doc 27    FILED 05/15/25    ENTERED 05/16/25 09:08:02    Page 5 of 19

> acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . . .
>
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (internal citations omitted).

### A. Fed. R. Civ. P. 8(a)

Operating in harmony with Rule 12(b)(6), Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Even though Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, mere "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Stated differently, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Twombly*, 550 U.S. at 555. Rather, to survive a motion to dismiss, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Bishop*, 520 F.3d at 519. Simply put, a complaint must allege more than a "mere 'formulaic recitation' of the elements of a claim to withstand a Rule 12(b)(6) challenge." *Gumpher v. ECMC (In re Gumpher)*, No. 16-31183, 2017 Bankr. LEXIS 139, at *6 (Bankr. N.D. Ohio Jan. 17, 2017) (quoting *NM EU Corp. v. Deloitte & Touche LLP (In re NM Holdings Co.)*, 622 F.3d 613, 623 (6th Cir. 2010)).

### B. Fed. R. Civ. P. 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure establishes that when alleging fraud (as is the case here), a party must state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Advocacy Org. For Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (factoring in Rule 9(b) in applying the plausibility standard in a case involving an allegation of fraudulent misrepresentation). For claims pertaining to fraud, "[a]t a minimum, the complaint must allege the time, place, and content of the alleged misrepresentation." *Harcourt v. Mallaley (In re Mallaley)*, No. 07-13345, 2008 Bankr. LEXIS 1098, at *2 (Bankr. S.D. Ohio Apr. 11, 2008) (citing *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005)).

As a practical matter, this is to ensure a defendant is given enough information to defend in a meaningful and informed manner. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) ("In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later."). In so doing, the Court "may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings. . . ." *Kuns Northcoast Sec. Ctr. LLC. v. Sharp (In re Sharp)*, No. 22-30854, 2024 Bankr. LEXIS 1293, at *5 (Bankr. N.D. Ohio June 3, 2024) (citing 2 Moore's Federal Practice ¶ 12.34[2] (3d. ed)); *see also Rondigo, L.L.C. v. Twp. Of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) ("[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. . . .") (internal quotation marks and brackets omitted).

7

### C. Exceptions to Discharge

The dischargeability of a debt under Chapter 7 of the Bankruptcy Code is subject to exceptions listed in 11 U.S.C. § 523(a). *See, e.g.*, *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023) (deciding a § 523(a)(2)(A) issue); *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013) (determining the scope of § 523(a)(4)).

The Plaintiffs' Complaint raises two of those exceptions. The Complaint asserts that the Plaintiffs debts are excepted from discharge under §§ 523(a)(2)(A) and (a)(4). The statutory exceptions to discharge are intended to implement the fundamental bankruptcy policy of affording a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). In furtherance of the fundamental fresh start policy, exceptions to discharge for debts enumerated in § 523(a) are to be construed narrowly. *Rembert v. AT&T Universal Card Svcs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998) (explaining that "exceptions to discharge are to be strictly construed against the creditor").

The Plaintiffs, as the party seeking exception of the alleged debt from Berkley's discharge, have the burden of proof under § 523(a) by a preponderance of the evidence. *Grogan*, 489 U.S. at 291. Importantly, "[w]hether a debt is non dischargeable under 11 U.S.C. § 523(a) is a matter separate from the merits of the debt itself." *Long v. Piercy (In re Piercy)*, 21 F.4th 909, 918 (6th Cir. 2021). That means that before the Court can find that the Plaintiffs have plausibly stated any claims under §§ 523(a)(2)(A) and (a)(4) for nondischargeability, the Court must first determine whether the Plaintiffs plausibly pled that Berkley, in his individual capacity, owes a debt to them. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) ("[W]ell-pleaded factual allegations must 'plausibly give rise to an entitlement to relief.' Pleaded facts

8

will do so if they 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678–79) (alternations in original)).

**D. The Corporate Veil**

The Plaintiffs' Complaint also calls for piercing the corporate veil and includes a substantive basis for such assertion. Under Ohio law, but for certain circumstances, "[a] corporation is a separate legal entity from its shareholders, even where there is but one shareholder." *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 602 N.E.2d 685, 687 (Ohio App. 6th Dist. 1991).

When a plaintiff succeeds on a claim to a pierce the corporate veil, courts will disregard a corporation's separate legal status and hold an individual shareholder liable for corporate misdeeds. In those circumstances, the corporate entity and the individual shareholder are treated as a single entity and the corporate liabilities become the liabilities of the individual shareholder. In Ohio, a claim for piercing the corporate veil succeeds when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 1993 Ohio 119, 617 N.E.2d 1075, 1085 (Ohio 1993).

Here, the Plaintiffs claim (1) "[Berkley] exercised complete control over [Berkley Marketing], disregarding corporate formalities and treating the corporation as their alter ego" ECF No. 1, ¶ 30; (2) "[Berkley's] actions constitute fraud and defalcation while acting in a fiduciary capacity, using his position to divert corporate funds for personal use and perpetrate fraud on the Plaintiffs" *Id.*, ¶ 35; and (3) that the Plaintiffs "lost profits from the non-

9

performance or underperformance of delivered ATMs, and other consequential damages resulting from [Berkley's] fraudulent conduct." *Id.*, ¶ 66.

The Plaintiffs' allegations in their Complaint adequately establish a basis under which Berkley in his individual capacity could be liable for the debts claimed, i.e., pierce the corporate veil. Therefore, the Plaintiffs have sufficiently pled enough for the Court to be able to decide whether a debt exists. Against this backdrop, the Court continues its review of the Plaintiffs' Complaint by applying the Federal Rules' standards in conjunction with the §§ 523(a)(2)(A) and (a)(4) elements.

**II.        11 U.S.C. § 523(a)(2)(A)**

Starting with the text, § 523(a)(2)(A) provides:

> (a) Discharge under [§ 727] does not discharge an individual debtor from any debt –
> (2) For money . . . to the extent obtained by . . .
>    (A) false pretenses, a false representation, or actual fraud . . . ;

11 U.S.C. § 523(a)(2)(A).

The Plaintiffs' claims are rooted in allegations of fraud so the Complaint must also clear the Rule 9(b) bar, requiring the Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In so doing, the Plaintiffs must "allege the 'who, what, where, when and why' of the alleged fraud." *Danberry Co. v. Nadeau (In re Nadeau)*, No. 21-31239, 2022 Bankr. LEXIS 2778, 2022 WL 4540235, at *13 (Bankr. N.D. Ohio Sept. 28, 2022) (citing *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus.*, 29 F.4th 802, 812 (6th Cir. 2022)).

Ultimately, in order to except the debts from discharge under § 523(a)(2)(A), the Plaintiffs must prove the following elements by a preponderance of the evidence:

> (1) the debtor obtained money through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d at 280–81.

At this stage, however, the Court only reviews the Complaint for its sufficiency.

### A. False Representations and False Pretenses

Under § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland (In re Wentland)*, 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009) (quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson (In re Thompson)*, 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011) (quoting *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also In re Wentland*, 410 B.R. at 594. Additionally, to form the basis of a false representation, a debtor-promisor's representation (such as a lack of intent to perform under the contract) must exist at the time the contract was executed. *See Siebanoller v. Rahrig (In re Rahrig)*, 373 B.R. 829, 834 (Bankr. N.D. Ohio 2007).

A breach of contract or breach of promise, alone, cannot be the basis for nondischargibility under § 523. *Risk v. Hunter (In re Hunter)*, 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015) ("A broken promise alone will not establish the existence of any intent to deceive."). Instead, the false representation must be one of an existing fact. *Id*. at 213.

11

### B. Actual Fraud

In addition to "false representation" and "false pretenses," the Supreme Court has held that § 523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 361 (2016); *see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Ritz*, 578 U.S. at 362.

The Supreme Court in Ritz affirmed that it has historically construed "actual fraud" in the § 523 broadly, stating: "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* at 360. There, the Supreme Court held that a fraudulent transfer scheme effectuated without any false representation to a creditor was within the § 523(a)(2)(A) exception to discharge. That means the term "actual fraud" in § 523(a)(2)(A) can more generally encompass schemes and forms of fraud accomplished without a false representation. *Id.* at 355.

"Direct, express proof of intent is rarely available." *Launder v. Doll (In re Doll)*, 585 B.R. 446, 455 (Bankr. N.D. Ohio 2018). A debtor's intent to defraud a creditor is measured by a subjective standard and can be ascertained through review of the totality of the circumstances. *In re Rembert*, 141 F.3d at 281–82. To that end, a finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct." *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (6th Cir. BAP 1999) (citing *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)).

In the current case, the Plaintiffs claim Berkley made "representations. . . regarding the profitability and viability of the ATM business opportunity, . . . [g]uarantee[d] a 40% return on investment within the first year, completely risk free; promis[ed] to provide and install all

12

contracted ATMs within a specific timeframe. . . ; [g]uarantee[d] a minimum monthly transition volume for each ATM. . . ; [p]romis[ed]to relocate failing ATMs at no cost; [o]ffering additional ATMs for free if locations were failing; [p]rovid[ed] lifetime access to educational and networking resources," and advertised that "TV's Kevin Harrington of Shark Tank fame mentored him and sponsored his businesses. . . ." ECF No. 1, ¶¶ 15, 16. The Plaintiffs also claim that Berkley "used his past as an Air Force veteran to attract entrepreneurs and present himself as a trustworthy businessman to the public" and "showcased his purported success across the internet by flaunting exotic luxury vehicles and cash he said he had earned from his business ventures." *Id*., ¶¶ 19, 20.

The Plaintiffs also provided abundant support for their claims by way of exhibits: demonstrating Berkley's social media posts, YouTube screenshots, articles, training manuals, and "Service Agreements" signed by Berkley and respective Plaintiffs.

The Plaintiffs' Complaint meets the requirements established by the *Walburn* court, which held that: "[a]t a minimum, the complaint must allege the time, place, and content of the alleged misrepresentation." *Walburn*, 431 F.3d at 972. It also meets the particularity bar because it adequately claims the "who, what, where, when and why" of the alleged fraud. *In re Nadeau*, 2022 Bankr. LEXIS 2778 at *13. Therefore, the § 523(a)(2)(A) claim is pled with enough particularity for the Court to find it plausible that false pretenses, false representations, or actual fraud could have existed. Thus, Berkley's Motion to Dismiss this claim is denied.

## IV.    11 U.S.C. § 523(a)(4)

Section 523(a)(4) exempts a debt from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Court addresses each provision of § 523(a)(4) in turn.

13

### A. Fraud or Defalcation While Acting in a Fiduciary Capacity

Courts "have long disagreed about the mental state that must accompany the bankruptcy-related definition of 'defalcation.'" *Bullock v. BankChampaign*, 569 U.S. 267, 272 (2013). Nevertheless, after reviewing law dictionaries, American dictionaries, and bankruptcy treatises, the Supreme Court determined that defalcation involves a culpable "state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 269.

Whether a party acted in a "fiduciary capacity" for purposes of § 523(a)(4) is determined by federal, not state law. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). The Sixth Circuit construes "fiduciary capacity" as used in § 523(a)(4) more narrowly than the term is used in other circumstances. *Id.* In order to trigger the fraud or defalcation provision in the statute, a debtor "must hold funds in trust for" the benefit of "a third party." *Id.* (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). Moreover, the exception for defalcation while acting in a fiduciary capacity "follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees." *Patel v. Shamrock Floorcovering Servs., (In re Patel)*, 565 F.3d 963, 967 (6th Cir. 2009).

The types of trusts which trigger the fraud or defalcation provision of § 523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Blaszak*, 397 F.3d at 390 (citing *In re Garver*, 116 F.3d at 180). In *Davis v. Aetna Acceptance Co.*, the Supreme Court instructed that the term "fiduciary capacity" is "narrower here than it is in some other contexts: § 523(a)(4)

14

covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" 293 U.S. 328, 333 (1934). Stated differently, "the mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present." *Blaszak*, 397 F.3d at 390.

To establish an express or technical trust under Ohio law, there must be (1) an intent to create the trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary. *Id.* at 391. This fits with the characterization of a fiduciary relationship as one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons v. Francis*, 75 Ohio St. 3d 433, 442, 1996-Ohio-194, 662 N.E.2d 1074 (1996).

Here, the Plaintiffs allege that throughout his dealings with them, Berkley "occupied a position of trust and confidence, creating a fiduciary relationship." ECF No. 1, ¶ 36. And that the "fiduciary relationship arose from . . . [Berkley's] control over Plaintiffs' investments." *Id.*, ¶ 37(b). They further contend that Berkley "committed fraud and defalcation while acting in a fiduciary capacity by: [m]isappropriating corporate funds for personal use; [c]ommingling corporate and personal funds; continuing to accept customer payments while knowing the company could not fulfill its obligations; [f]ailing to maintain adequate corporate records and observe corporate formalities;" and "breaching his duty of loyalty to the corporation and its creditors by prioritizing his personal interests over those of the company and its creditors." *Id.*, ¶ 73.

There is a vital distinction between occupying a "position of trust" (in the colloquial sense as the Plaintiffs allege), and the actual establishment of an "express" or "technical" trust, as discussed by the Supreme Court in *Davis* and elaborated on by the Sixth Circuit in *Blaszak*.

15

To that end, the Plaintiffs do not allege there was intent to create an express or technical trust. Without more, which the Plaintiffs have not shown, it is insufficient to establish the existence of an express or technical trust for purposes of a fiduciary capacity under § 523(a)(4). See *Perry v. Ichida (In re Ichida)*, 434 B.R. 852, 863 (Bankr. S.D. Ohio 2010) (holding there was no fiduciary capacity of a managing member who failed to comply with duties at common law or under operating agreement in the absence of an express trust).

The Court finds that Plaintiffs have not pled with enough particularity that there is any express or technical trust. Therefore, Berkley's Motion to Dismiss pursuant to the fraud or defalcation while acting in a fiduciary capacity provision of § 523(a)(4) is granted.

### B. Embezzlement

"A creditor proves embezzlement under § 523(a)(4) 'by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.'" *In re Piercy*, 21 F.4th at 919 (quoting *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1173 (6th Cir. 1996)). Moreover, embezzlement in the bankruptcy context has long required a showing of wrongful intent. *See Neal v. Clark*, 95 U.S. 704, 709 (1878) (noting that, under third section of the bankrupt law of 1867, embezzlement involved moral turpitude or intentional wrong).

Here, the Plaintiffs allege they entrusted Berkley with their property (money), for purposes of acquiring ATMs and related services. ECF No. 1, ¶ 14. Berkley "[g]uarantee[d] a 40% return on investment within the first year, completely riskfree [sic] (*Id.*, ¶ 15) and "[p]romis[ed] to provide and install all contracted ATMs within a specific timeframe. . . ." *Id.*, ¶ 15(b). Further, to gain their entrustment, Berkley "used his past as an Air Force veteran to attract entrepreneurs and present himself as a trustworthy businessman." ECF No. 1, ¶ 19. According

to the Plaintiffs, Berkley "[m]isappropriat[ed] Plaintiffs' funds for personal use instead of investing them as promised." *Id.*, ¶ 41(a). Additionally, "[t]he continued solicitation of new contracts even as existing obligations went unfulfilled suggests a 'Ponzi-like' scheme, using new investments to partially fulfill older contracts." *Id.*, ¶ 60(b).

Applying the elements outlined in *Piercy*, the Plaintiffs' Complaint meets the plausibility bar for the embezzlement provision of § 523(a)(4): the Plaintiffs claim they entrusted their money to Berkley with the expectation of receiving ATMs and ATM related services, that they did so because of Berkley's allegedly fraudulent representations, and that Berkley used that money for personal expenses. Therefore, Berkley's Motion to Dismiss pursuant to the embezzlement provision of § 523(a)(4) is denied.

### C. Larceny

In contrast to embezzlement, when funds are voluntarily entrusted to the defendant, larceny involves a situation where the original taking is unlawful. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Id.* The Plaintiffs have not pled, nor do the alleged facts support, a claim under the larceny provision of § 523(a)(4). Therefore, Berkley's Motion to Dismiss pursuant to the larceny provision of § 523(a)(4) is granted.

### V. Rule 12(e) More Definite Statement

The Federal Rules hold that neither a court nor an opposing party should be required to guess as to the nature of a cause of action brought by a complainant. Rule 12(e) allows a party to file a motion for a more definite statement. At the same time, the Federal Rules adhere to the principle of notice pleading, with Rule 8(a) embodying this principle by providing that a
17

complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 12(e) motions are generally disfavored because of their dilatory nature. *See, e.g., Monahan v. Smyth Automotive, Inc.*, No. 1:10-CV-00048, 2011 U.S. Dist. LEXIS 9877, 2011 WL 379129, at *7 (S.D. Ohio Feb. 2, 2011); *Nat'l Strategies, LLC v. Naphcare, Inc.*, No. 5:10-CV-0974, 2010 U.S. Dist. LEXIS 137975, 2010 WL 5392947, at *14 (N.D. Ohio Dec. 22, 2010). Under Rule 12(e), a party can move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The standard for granting a motion for more definite statement will be met only if the complaint is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2008 U.S. Dist. LEXIS 108089, 2008 WL 4449024, at *8 (S.D. Ohio Sept. 26, 2008) (citing *Kok v. First Unum Life Ins. Co.*, 154 F.Supp.2d 777, 781-82 (S.D.N.Y. 2001)).

The Plaintiffs in this case identified their legal claims such that Berkley can identify the cause of action and reasonably be expected to respond to the allegations. Neither the Plaintiffs' §§ 523(a)(2)(A) nor their (a)(4) claims are vague or ambiguous. The Complaint is not unintelligible, having sufficiently pled enough such that Berkley is not prejudiced by answering it. Therefore, Berkley's Rule 12(e) Motion for More Definite Statement is denied.

## CONCLUSION

Berkley's 12(b)(6) Motion to Dismiss the § 523(a)(2)(A) claim and § 523(a)(4) claim under the embezzlement provision is denied. Berkley's Motion to Dismiss the Plaintiffs' § 523(a)(4) claim under the fraud or defalcation while acting in a fiduciary capacity provision and larceny provision is granted. The Rule 12(e) Motion for More Definite Statement is denied.

18

Berkley is directed to respond to the Complaint on or before 30 days from the entry of this Order.

**IT IS SO ORDERED.**